Craig A. Brandt (SBN 133905)
LAW OFFICE OF CRAIG A. BRANDT
5354 James Avenue
Oakland, CA 94618
Telephone: (510) 601-1309
Email: craigabrandt@att.net

Attorneys for Plaintiff
EDEN ENVIRONMENTAL CITIZEN'S GROUP, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDEN ENVIRONMENTAL CITIZEN'S GROUP, LLC, a California limited liability company,<br><br>            Plaintiff,<br><br>    vs.<br><br>RAYNER RESOURCES, formerly known as CALIFORNIA PAVEMENT MAINTENANCE COMPANY, INC., et al,<br><br>            Defendants. | Case No.: 2:19-cv-02357 JAM<br><br>**CONSENT DECREE AND STIPULATED DISMISSAL**<br><br>(Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq.)<br><br>The Honorable John A. Mendez<br><br>Trial Date:    None Set |

## <u>CONSENT DECREE</u>

WHEREAS, Eden Environmental Citizen's Group, LLC ("EDEN") is an environmental citizen's group organized under the laws of the State of California, dedicated to protect, enhance, and assist in the restoration of all rivers, creeks, streams, wetlands, vernal pools, and tributaries of California, and the United States;

WHEREAS, Rayner Resources, Inc., formerly known as California Pavement Maintenance Company, Inc. ("Rayner") is a corporation organized under the laws of California that operates the design and manufacturing facility located at 9390 Elder Creek Road Sacramento, California ("Site" or "Facility"), which EDEN alleges discharges storm water

1

pursuant to the State Water Resources Control Board's General Industrial Activities Storm Water Permit, Order No. 2014-0057-DWQ, NPDES Permit No. CAS000001, and any amendments thereto ("General Permit"); The Facility operations are covered under the General Permit under Waste Discharger Identification Number ("WDID") 5S34I021051.

WHEREAS, on or about September 15, 2019, EDEN provided Rayner with 60-Day Notices of Violations and Intent to File Suit ("Notice Letter") under section 505 of the Federal Water Pollution Control Act, 33 USC § 1365 (the "Act" or "CWA"), alleging violations under CWA and General Permit relating to activities at the Site; and on January 2, 2020, EDEN issued a Supplemental Notice Letter to Rayner (collectively "Notice Letters");

WHEREAS, on or about November 21, 2019, EDEN filed its Complaint (Civil Action No. 2:19-cv-02357 JAM) in U.S. District Court for the Eastern District of California against Rayner Resources, Richard Rayner, Gordon Rayner, and Kris Hendren individually, who collectively herein, shall be referred to as ("Defendants");

WHEREAS, the Defendants on or about February 14, 2020, filed their Answer denying all allegations and claims contained in the Notice Letters and/or Complaint, and reserve all rights and defenses with respect to such allegations and claims;

WHEREAS, it is EDEN's position that since the filing of EDEN's complaint in this matter, Defendants have voluntarily elected to come into compliance with the General Permit, including commencing a compliant Monitoring Implementation Plan, implementing additional Best Management Practices ("BMPs") at the Facility, conducting site evaluations by a Qualified Industrial Stormwater Practitioner ("QISP"), drafting required Technical Reports and revising the Facility's Stormwater Pollution Prevention Plan ("SWPPP"). However, Defendants' position is that both before and after the filing of the Complaint, Defendants have never been out of compliance with the General Permit.

WHEREAS, EDEN and Defendants (collectively, "the Parties"), through their authorized representatives and without either adjudication of the Complaint's claims or admission by Defendants of any alleged violation or other wrongdoing, have chosen to resolve

this action through settlement and avoid the costs and uncertainties of further litigation;

NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH IS HEREBY ACKNOWLEDGED, THE PARTIES EACH HEREBY STIPULATE BETWEEN THE SETTLING PARTIES, AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:

<u>**TERMS AND CONDITIONS**</u>

1.     This Consent Decree, and each of its provisions, including all representations; warranties, and promises contained herein, binds, and inures to the benefit of EDEN and Defendants, and each of their respective assigns, present and future operators, affiliates, parents, subsidiaries, predecessors, and successors in interest whether by merger, consolidation, or otherwise, as well as their respective representatives, agents, members, officers, and administrators, past, present, and future.

2.     The term "Effective Date," as used in this Consent Decree, shall mean the last date for the United States Department of Justice to comment on the [Proposed] Consent Decree and Stipulated Dismissal, i.e., the 45th day following the United States Department of Justice's receipt of the [Proposed] Consent Decree and Stipulated Dismissal.

3.     This Consent Decree will terminate one (1) year from the Effective Date ("Termination Date"), or until such time as Defendants obtain a Notice of Termination ("NOT") from the Regional Water Board; at which time the Consent Decree, and all obligations under it, shall automatically terminate, unless one of the Parties has invoked Dispute Resolution in accordance with the Consent Decree. The word "Term," as used in this Consent Decree, shall mean that period between the Effective Date and the Termination Date.

<u>**ACTIONS TO BE TAKEN BY RAYNER**</u>

1.     **<u>Compliance with the General Permit</u>**: Defendants agree, for the Term of this Consent Decree or until such time as Defendants obtains an NOT, to fully comply with all laws,

regulations and other legal requirements which may be imposed upon them, including by the CWA, in connection with the implementation of its SWPPP and compliance with the General Permit.

2. **Best Management Practices**:  Defendants agree to implement and maintain all minimum and advanced Best Management Practices ("BMPs") contained in its amended Storm Water Pollution Prevention Plan ("SWPPP") dated May 23, 2020, as well as all BMPs recommended by its retained Qualified Industrial Stormwater Practitioner ("QISP") or other qualified environmental consultant.

3. **Storm Water Sample Collection and Analysis**:  Until such time as an NOT is obtained, Defendants shall collect and analyze storm water samples from the Site, from the Effective Date to the Termination Date,  from Qualifying Storm Events ("QSEs") as defined in the General Permit, at the times and frequencies required by the General Permit.  Defendants shall ensure that the collection, preservation, and handling of these storm water samples are in accordance with *General Permit Attachment H, Storm Water Sample Collection and Handling Instructions*.

*Sampling and Analysis*

(a)  Samples are to be collected from each drainage area at all discharge locations identified in Defendant's SWPPP where a discharge occurs, and must be representative of storm water associated with industrial activities and any commingled authorized Non Storm Water Discharges ("NSWDs"); or associated with any discharge of contained storm water;

(b)  All collected samples from the Site are to be analyzed for the following parameters: Total Suspended Solids (TSS); Oil and Grease (O&G); and pH;;

(c)     Samples are to be forwarded to a California-certified analytical laboratory selected by Defendants in its sole discretion, within forty-eight (48) hours of collection; and

(d)     Defendants shall upload to SMARTS all sample analyses received from its analytical laboratory within thirty (30) days of receipt.

4.     **Mitigation of Potential Exceedances**:  Until such time as an  NOT is obtained, in the event that the sample analyses (laboratory reports) of Defendant's  storm water samples referred to in <u>Section 7</u>, above, indicate results for the tested parameters that exceed either the instantaneous or annual Numeric Action Levels ("NALs") as indicated in Table 2 of and interpreted as prescribed under the General Permit, Defendants agree to work with its designated QISP or environmental consultant to review Defendant's  housekeeping practices and BMPs and if necessary revise its SWPPP in order to reduce its tested pollutant parameters, and to provide training and consultation to achieve that objective.

5.     **Submission of Additional Reports to EDEN**:  Prior to termination of this Consent Decree or until such time as a NOT is obtained, whichever shall occur first to the extent that annual or other monitoring reports are not otherwise uploaded to and made available on the State Water Resources Control Board's SMARTS database, Defendants agree to provide EDEN with a copy of any reports concerning industrial storm water matters addressed in this Consent Decree. Defendants may furnish copies of any such reports to EDEN in either hard copy or digital form.

6.     **Site Visit**: Prior to termination of this Consent Decree or issuance of a NOT, EDEN may request a site visit to review Defendant's compliance with the General Permit. If Defendants have consented to such site visit, EDEN shall provide Defendants with a minimum of forty-eight

(48) hours' notice in accordance with the notice requirements of this Consent Decree and shall set the Site visit at a time during business hours convenient Defendants and its consultant and counsel. Defendants have the right to obtain a split sample or take a separate sample at the same time and location if a sample is taken during the visit. -

7.      **Annual QISP Review**:  For the Term of this Consent Decree or until a NOT is issued, Defendant's neutral third-party QISP of its choice will review BMPs and site procedures to ensure compliance with the General Permit at least once each year.  Defendants shall provide EDEN with documented results of each visit, and these results shall be uploaded to the SMARTs system.  EDEN will accept Exceedance Response Reports or Annual Evaluation Reports in compliance with this Section.

8.      **Annual Training**:  For the Term of this Consent Decree, or until a NOT is issued Defendants will conduct annual training for its storm water personnel on storm water monitoring and reporting, BMPs, the General Permit, and General Permit compliance. Defendants will document such training and provide documentation of the training to EDEN.

9.      **Release Payment**.  Defendants in exchange for the Releases set forth in this Consent Decree, shall pay to EDEN the total sum of Fifty Thousand Dollars and No Cents ($50,000.00) representing full satisfaction of all claims by EDEN.  Said payment to EDEN shall be made by Defendants in the form of a certified or cashier's check made payable to "Craig A. Brandt Attorney Trust Fund" within five (5) days of the Effective Date of this Consent Decree, forwarded by overnight mail with tracking to Craig A. Brandt at the address listed below:

Craig A. Brandt
Law Office of Craig A. Brandt
5354 James Avenue
Oakland, CA  94618

Telephone: (510) 601-1309
Email: craigabrandt@att.net

Provision of the afore-mentioned funds shall constitute full and final payment for all EDEN's claims and for all costs of anticipated litigation, and attorneys' and expert's fees and costs incurred by EDEN that have or could have been claimed in connection with EDEN's allegations in its Notice Letters and Complaint and/or under state or federal law.

10. **Environmental Mitigation Payment.** In recognition of the good-faith efforts by Defendants to comply with all aspects of the General Permit and the CWA, Defendants agree to pay the sum of Two Thousand Dollars and No Cents ($2,000.00) to Friends of the River for the sole purpose of providing environmentally beneficial projects within the greater Sacramento areas to improve water quality in those communities. Such payment shall be remitted within five (5) days of the Effective Date of this Consent Decree, directly to Friends of the River at:

Eric Wesselman
Friends of the River
1418 20th Street, Suite 100
Sacramento, CA 95811

Telephone: (916) 442-3155, ext 218
Email: eric@friendsoftheriver.org

Further, Rayner agrees to provide confirmation of the Environmental Mitigation Payment by an email directed to the Law Offices of Craig A. Brandt: craigabrandt@att.net. Said confirmation shall include reasonable information demonstrating the date and amount of the payment.

11. **Compliance Monitoring Funding.** To defray EDEN's reasonable investigative, expert, consultant and attorneys' fees and costs associated with monitoring Defendant's compliance with this Consent Decree, Defendants agree to contribute One

Thousand Five Hundred Dollars and No Cents ($1,500.00), for the Term of this Consent Decree, or until such time as a NOT is obtained, to a compliance monitoring fund maintained by EDEN's financial counsel. The compliance monitoring funding check shall be made payable to "Craig A. Brandt Attorney Trust Fund" and forwarded to the Law Office of Craig A. Brandt as indicated in <u>Section 13</u>, above.

Payment of the compliance monitoring fee is due within five (5) days of the Effective Date of this Consent Decree.

12. **<u>Breach of Payment.</u>** If any payment owed under this Consent Decree is not remitted or post-marked on or before its due date, EDEN shall provide written notice to Defendants; if Defendants fails to pay within three (3) weeks of such notice, then all future payments due hereunder shall become immediately due and payable, with the prevailing federal funds rate applying to all interest accruing on unpaid balances due hereunder, beginning on the due date of the funds in default.

13. **<u>Dispute Resolution.</u>** If a dispute under this Consent Decree arises, or the Parties believe that a breach of this Consent Decree has occurred, the Parties shall schedule a meet and confer within ten (10) business days of receiving written notification from the other Party of a request for a meeting to determine whether a violation of this Consent Decree has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute. If the parties fail to meet and confer or the meet and confer does not resolve the issue, after at least seven (7) business days have passed after the meet and confer occurred or should have occurred, either Party shall be entitled to all rights and remedies under the law, including bringing a motion before the United States District Court for the Eastern District of California for the limited purpose of enforcing the terms of this Consent Decree. The Prevailing Party

shall be entitled to seek attorney fees and costs incurred in any such action pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

## **JURISDICTION OVER PARTIES AND SUBJECT MATTER**

14.     **Jurisdiction.**  For the purposes of this Consent Decree, the Parties stipulate that the United States District Court of California, Eastern District of California, has jurisdiction over the Parties and subject matter of this Consent Decree during the Term of this Consent Decree or until a NOT is issued, whichever occurs first.  The Parties stipulate that venue is appropriate in the Eastern District of California and that Defendants will not raise in the future as part of enforcement of this Consent Decree whether EDEN has standing to bring the Complaint or any subsequent action or motion pursuant to the Dispute Resolution procedures herein.  Defendants reserves all other rights and defenses in any such proceeding.

15.    **Notice of Settlement, Statutory Agency Review and Case Dismissal.**

(a)     Within three (3) business days of receiving all the Parties' signatures to this Consent Decree, EDEN shall submit this Consent Decree to the U.S. Department of Justice ("DOJ") and EPA for agency review consistent with 40 C.F.R. § 135.5 and shall concurrently provide Defendants with proof of such transmittal.  The agency review period expires forty-five (45) days after receipt by the DOJ, evidenced by correspondence from DOJ establishing the review period.

(b)     Within three (3) days of the mutual execution of this Consent Decree, EDEN shall submit a Notice of Settlement to the Eastern District Court.

(c)     Within seven (7) days of the expiration of the 45-day agency review period described above, the Parties shall execute a joint Stipulation for Dismissal, and EDEN shall submit same to the Court with a proposed Order.

(d)     The Stipulation for Dismissal shall provide that the Complaint and all claims against Defendants shall be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2); and that the Court shall retain and have jurisdiction over the Parties with respect to disputes arising under this Consent Decree, which shall be attached thereto and fully incorporated by reference, through the Termination Date. Nothing in this Consent Decree shall be construed as a waiver of any Party's right to appeal from an order that arises from a motion to enforce the terms of this Consent Decree.

## **WAIVER AND RELEASES**

16.     **EDEN's Waiver and Release of Noticed Parties**.  EDEN, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors and assigns releases Defendants, its officers, directors, employees, members, parents, subsidiaries, affiliates, successors or assigns, agents, attorneys and other representatives from and waives all claims raised in the 60-Day Notices and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notices and/or the Complaint.

17.     **Rayner Release of EDEN**.  Defendants, on its own behalf and on behalf of its officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns release EDEN and its officers, directors, employees, members, parents, subsidiaries,

and affiliates, and each of their successors and assigns from, and waive all claims which arise from or pertain to, the 60-Day Notices and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notices and/or the Complaint, except that Defendants do not release EDEN from any or all claims, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters pertaining to any Dispute Resolution identified herein under Paragraph 13.

18. **Release of Liability Under Civil Code § 1542**. The Parties acknowledge that they are familiar with Section 1542 of the California Civil Code. For any other claims against each other, known or unknown, suspected or unsuspected, and each party expressly waives and relinquishes any rights and benefits which they have or may have under Section 1542 of the Civil Code of the State of California, which provides:

> *A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.*

The Parties acknowledge that each has specifically reviewed with its attorney the meaning and effect of the release set forth herein, the language of California Civil Code Section 1542, and the waiver contained herein. The Parties acknowledge that their attorneys have fully explained the impact of these provisions, and the Parties knowingly accept the risks associated with these provisions.

19. **Covenant Not to Sue**. As of the Effective Date of this Consent Decree, and for a period to and including the Termination Date of this Consent Decree, EDEN agree that neither EDEN, its officers, directors, executive staff, members, nor any individuals or organization under

the control of EDEN, its officers, executive staff, or members of its governing board, will serve any 60-day Notice of Violations and Intent to Sue or file any lawsuit against Defendants or their respective affiliates, past and present employees, operators, officers, directors, officials, consultants, attorneys, members, principals, agents and representatives, predecessors, successors, or assigns seeking relief for alleged violations of the CWA, or any similar state statutes and/or regulations, including the Porter Cologne Water Quality Control Act (Cal. Water Code § 13000 et seq.), or of the General Permit, related to the Site. EDEN further agree that it shall not initiate or support such lawsuits against Defendants or their affiliates, past and present employees, operators, officers, directors, officials, consultants, attorneys, members, principals, agents and representatives, predecessors, successors, or assigns brought by other groups or individuals by providing financial assistance, personnel time, or any other affirmative actions.

20. **No Admission**. This Consent Decree is the direct result of a compromise of disputed allegations and claims. As such, this Consent Decree shall not, for any purpose, be considered as an admission of liability by Defendants or any other party, nor shall the payment of any sum of money in consideration for the execution of this Consent Decree constitute or be construed as an admission of any liability by Defendants or any other party, and such alleged liability, and any alleged wrongdoing, is expressly denied.

21. **Force Majeure**. None of the Parties shall be deemed in default or breach of this Consent Decree by reason of any event that constitutes a force majeure. For purposes of this Consent Decree, a force majeure is defined as any event arising from causes beyond the reasonable control of the Parties or their contractors that delay or prevents performance. This includes, without limitation, acts of God, acts of war, acts of terrorism, fire, explosion, extraordinary weather events, a local or nationally declared health epidemic or pandemic, including but not limited to

COVID-19 restraint by court order or public authority, or other causes beyond the Parties'
reasonable control.

22. **Notices.** All notices, consents, approvals, requests, demands and other
communications (collectively, "Notices") which the Parties are required or desire to serve upon or
deliver to the other Party shall be in writing and shall be given by nationally-recognized overnight
courier, by certified United States mail, return receipt requested, postage prepaid, addressed as set
forth below, or by electronic mail addressed as set forth below:

**If to EDEN:**

Craig A. Brandt
Law Office of Craig A. Brandt
5354 James Avenue
Oakland, CA 94618

Telephone: (510) 601-1309
Email: craigabrandt@att.net

**If to Rayner:**

Diane Kindermann Henderson
Abbott & Kindermann, Inc.
2100 21st Street
Sacramento, CA 95818

Telephone: (916) 456-9595
Email: DKindermann@aklandlaw.com

The foregoing addresses may be changed by Notices given in accordance with this
Section. Any Notices sent by mail shall be deemed received two (2) days after the date of
mailing. Any Notices sent by electronic mail shall be deemed received upon electronic
transmission thereof provided sender does not receive electronic notice of non-delivery. Any
Notices sent by overnight courier service shall be deemed received on the day of actual delivery
as shown by the confirmation of delivery by the messenger or courier service. If the date of

receipt of any Notices to be given hereunder falls on a weekend or legal holiday, then such date of receipt shall automatically be deemed extended to the next business day immediately following such weekend or holiday for purposes of calculating time periods commencing upon the date of service.

23. **Attorneys' Fees**.  In any <u>future</u> dispute arising out of or related to this Consent Decree, whether resulting in the filing of suit in any court of competent jurisdiction, or whether settled out of court, the prevailing party shall have the right to collect from the other party its reasonable attorney fees and costs, as well as all necessary expenditures.  Other than the payment to EDEN under <u>Section 12</u>, herein, each Party shall bear its own attorneys' fees and costs relating to the subject matter of this Consent Decree.

24. **Parties' Acknowledgment of Terms**.  Each Party hereby represents that it has carefully and fully read and reviewed this Consent Decree and that it has had an opportunity to consult with its respective counsel, and hereby represents that the contents of this Consent Decree are understood and accepted.

25. **Interpretation and Applicable Law**.  This Consent Decree shall be construed and interpreted in accordance with the laws of the State of California without regard to principles of conflicts of law.

26. **Assignment**.  Subject only to the express restrictions contained in this Consent Decree, all the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties and their successors and assigns.

27. **Counterparts.**  This Consent Decree may be executed in one or more counterparts, all of which together shall constitute one original Consent Decree. Telecopy,

electronic, and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

28. **Headings**.  The headings used in this Consent Decree are for convenience of reference and shall not be used to define any provision.

29. **Integrated Consent Decree**.  This is an integrated Consent Decree.  This Consent Decree constitutes the entire agreement between the Parties hereto with respect to the subject matter set forth herein and supersedes all previous or contemporaneous negotiations, commitments (oral or written), and writings with respect to the subject matter set forth herein.

30. **Modification or Amendment**.  This Consent Decree and each of its provisions may be modified or amended only by written agreement executed by all Parties to this Consent Decree.

31. **No Representations or Warranties.**  This Consent Decree is given voluntarily, free of undue influence, coercion, duress, menace, or fraud of any kind.  Except as otherwise expressly set forth in this Consent Decree, no Party, nor any officer, agent, employee, representative, or attorney of or for any Party, has made any statement or representation to any other Party regarding any fact relied upon in entering this Consent Decree, and no Party is relying upon any statement, representation, or promise of any other Party, nor of any officer, agent, employee, representative, or attorney of or for any Party, in executing this Consent Decree or in making the settlement provided herein, except as expressly stated in this Consent Decree.

32. **Severability.** If any term of this Consent Decree is to any extent illegal, otherwise invalid, or incapable of being enforced, such term shall be excluded to the extent of such invalidity or unenforceability; all other terms hereof shall remain in full force and effect;

and, to the extent permitted and possible, the invalid or unenforceable term shall be deemed replaced by a term that is valid and enforceable and that comes closest to expressing the intention of such invalid or unenforceable term.

33. **Negotiated Consent Decree**. The Parties acknowledge they have negotiated this Consent Decree and agree that the terms shall not be construed against the Party preparing it, but instead shall be construed as if the Parties jointly prepared this Consent Decree. Any uncertainty or ambiguity shall not be interpreted against any one Party.

34. **Authority.** Each of the persons signing this Consent Decree on behalf of an entity represents and warrants that he or she has actual authority and capacity to execute this Consent Decree on behalf of the entity and to bind it to all the terms of this Consent Decree.

The Parties hereby enter into this Consent Decree and Stipulated Order, and submit it to the Court for its approval and entry as a final judgment.

**EDEN ENVIRONMENTAL CITIZEN'S GROUP LLC**

By: _/s/ Aiden J. Sanchez_____ Dated: 4/1/2021 bbbbbbbbbbbbbbbbbbbbb
     Aiden J. Sanchez, Managing Member


**RAYNER RESOURCES, INC., a California corporation**

By: _/s/ Gordon Rayner_____ Dated: 4/1/2021 _____
     Gordon Rayner
     Its President/CEO


**GORDON L. RAYNER, an individual**

_/s/ Gordon Rayner_____ Dated: 4/1/2021 _____
Gordon L. Rayner

**RICHARD D. RAYNER, an individual**

*/s/ Richard D. Rayner*                          4/1/2021
_____     Dated: _____
Richard D. Rayner

**KRIS HENDREN, an individual**

*/s/ Kris Hendren*                              4/1/2021
_____     Dated: _____
Kris Hendren


**APPROVED AS TO FORM:**

**LAW OFFICE OF CRAIG A. BRANDT**

By:   */s/ Craig A. Brandt*_____     Dated: ___4/2/2021_____
     Craig A. Brandt
     Attorney for EDEN


**ABBOTT & KINDERMANN, INC.**

By:   */s/ Diane Kindermann Henderson*_____     Dated: ___4/2/2021_____
     Diane Kindermann Henderson
     Attorney for Rayner Resources

## CONSENT DECREE

IT IS HEREBY ORDERED that the above-captioned action against all parties is dismissed with prejudice.

IT IS FURTHER ORDERED that, through the Termination Date specified in paragraph 4 of the Consent Decree, the Court shall retain jurisdiction over EDEN's claims against Defendants for the sole purpose of enforcing compliance by the Parties with the terms of the Consent Decree.

**APPROVED AND SO ORDERED**, this 1st day of June, 2021.


/s/ John A. Mendez
THE HONORABLE JOHN A. MENDEZ
UNITED STATES DISTRICT COURT JUDGE